### Henley v. State.

(Division A.   May 12, 1947.)

[30 So. (2d) 423.   No. 36482.]

Kermit R. Cofer, of Water Valley, for appellant.

**Greek L. Rice**, Attorney General, by **Geo. H. Ethridge**, Assistant Attorney General, for appellee.

Argued orally by **Kermit Cofer**, for appellant.

**Roberds, J.,** delivered the opinion of the court.

Henley was indicted for, and convicted of, assault and battery upon Jim Wright with intent to kill him by the use of "a large stick." On the trial of the case a large stick was introduced in evidence. On this appeal, Henley contends, among other things, that the admission of this stick in evidence was error, and that he was greatly prejudiced thereby.

There is no evidence whatever in this record that this particular stick was used in the assault and battery upon Wright. Wright was the only eye-witness who testified. He said that on the day of the assault, which was Saturday, September 22, 1945, he met in the Town of Bruce,

Mississippi, a man by the name of Massey, with whom he was acquainted, and he and Massey ate lunch together. He loaned to Massey $1; that "something after one o'-clock" he and Massey met Henley, the appellant, and a man by the name of Thomas; one of the three suggested that they take a ride out of the Town of Bruce in Thomas' car. This they did; Thomas driving. A short distance out, all of them except Thomas took a drink of whiskey, and a short distance further Henley and Massey took another drink of whiskey. Wright said they drove directly to a spot about one and one-half or two miles a little east of north of Bruce, where the car stopped. This particular spot appears to have been generally used as a place for gambling, especially shooting dice. The four parties got out of the automobile and the dice game immediately started, but Wright did not engage therein. What then happened can best be told in the words of Wright:

"Q. When they got out and said they were going to shoot some craps, what happened then? A. They all got on their knees and Massey to my left, and Henley here, (indicating), and Thomas over here, (indicating), and they went to shooting, and Massey lost I suppose.

"Q. What were you doing? A. Sitting down there looking at them, and he went broke and he wanted to borrow some money from me, and I told him: I let you have a dollar in town and I don't intend to let you have any money to shoot dice with. I don't gamble.

"Q. Did you have any money on you at that time? A. Yes, sir, I had $150.00 in a bill fold and seventy-five cents in my pocket.

"Q. And they got in a crap game and Massey wanted to borrow from you, what happened then? A. He held the dice up and Henley said: Hell, let me have them you will not not shoot them and he come around like he was coming in between me and Massey, and when he did that he hit me up above the ear on the left side, and that is all I know."

And, he said this blow made no scar on his head. This is all of the evidence as to what happened at the scene. Wright further said that he became conscious late in the afternoon, and it appears that he was then some distance from the gambling scene, and he had been badly beaten and bruised by some one. He testified, however, that he knew nothing after being hit on the side of his head.

Mr. Guy Taylor, the marshal of the Town of Bruce, testified that he and a deputy sheriff went to the gambling scene that Saturday afternoon about 3 o'clock. They had not then heard of the assault upon Wright. They knew this place was used generally for gambling purposes and they were watching it, and they went for the purpose of detecting any one who might be there engaged in gambling. They found there three men whose names do not appear from the evidence. However, they did not find there any one of the four persons who were present when the assault in question was made. Nor did Taylor or the deputy sheriff testify to finding at the scene any stick on Saturday afternoon. Mr. Taylor further testified that he and the sheriff went back to what he called the "same crap ground" the next morning, which was Sunday. His description of finding the stick which was introduced in evidence is in these words: "Yes, sir, going on down there on the right hand side of the road before we got to the place where they had been shooting craps, I seen a dogwood bush cut down and we went on down and the sheriff looked on the right hand side of the road and I on the left-hand side there was a little red oak tree and I picked up the dogwood brush." He said the stick was about three feet long, and at its largest end was about the size of his forearm; that "it was just to the left of" the "crap ground;" that there was no blood on the stick. One other witness testified that about dark on Saturday afternoon, at a community called Banner, which appears to be a short distance from the scene of the assault, he saw Henley and that he "noticed a little blood on his shirt" and asked

him what was the matter, and "the best I remember he said he just beat a fellow up."

Thus, it is seen that there is no evidence whatever that Henley used the stick which was introduced in evidence. Wright's testimony shows that Henley did not have a stick when he assaulted Wright. The officer's evidence shows the stick was cut from a tree located some distance from the "crap shooting ground." Wright's testimony is to the effect that immediately on arriving at the scene, the party got out of the automobile and engaged in the crap game. Wright's testimony negatives the idea that any one, before the assault, cut a stick from a tree and used that stick in the assault. It may be that Henley, or some one else, did use this particular stick, but there is no evidence whatever that it was so used. It is shown that this was the general gambling place for gamblers, and that at least three persons were there on Saturday afternoon after this unfortunate affair took place. The stick was not found until Sunday morning. There is no evidence when or how the stick came to be at the scene. The introduction of the stick before the jury, and the assumption of its use by Henley upon Wright, must have had much weight with the jury. Wright was badly injured, and it is unfortunate that all of the facts could not be developed and the guilty party convicted and punished, whether such party be Henley or some one else. It may be this can be done on another trial. However, under the foregoing circumstances, the stick was not competent evidence and we are compelled to reverse and remand the case.

Reversed and remanded.