O'QUINN *v.* STATE.

May 12, 1952.

No. 38435 (58 So. (2d) 670)

Armstrong & Hoffman, and Henley, Jones & Woodliff, for appellant.

W. M. Broome, and Joe T. Patterson, Assistant Attorney General, for appellee.

**Lee, J.**

Charlie Will O'Quinn was convicted of an assault and battery with intent to kill and murder Robert Stamps. From a judgment and sentence of 7 years in the state penitentiary, he appeals.

The victim was 11 years of age when the assault occurred and 12 at the time of the trial. According to his version, on December 16, 1950, he went to the home of Boquet O'Quinn, where appellant lived, for the purpose of going rabbit hunting. He and several other small boys were at the woodpile about 15 feet from the house. The dogs got to fighting. Appellant came out of the house and said to Robert, "Boy, don't put them dogs to fighting". Robert replied, "I didn't have them fighting." The appellant then said, "You black s.. o.. b.., I will kill you." He thereupon picked up a stick, walked behind Robert, drew back, and struck him on the head. The blow not only knocked him unconscious but the boy remained in that condition for several weeks.

Robert's stepmother heard of the trouble and went to the scene in about 15 minutes. She found the boy, lying on the ground, bleeding from his nose. She saw the appellant in the house at the window, and went to get a quilt to lay the boy on the porch. But appellant would not let her in the house. A car was obtained, and the injured boy was carried to the Baptist Hospital where Dr. C. L. Neill examined and treated him. At that time the boy was unconscious, in a deep coma, and his lower extremities were paralyzed. There was a fracture which extended all the way around the skull, and at the top, the bone was driven in and against the brain. When his condition finally permitted, the depressed bone was lifted and a blood clot removed. The boy's injury was a serious and disabling one, and, in the doctor's opinion, he will never be any better than he was at the time of the trial.

The defense was that the injury arose from an accident. Appellant testified that he brought from the pasture, on

his shoulder, a small pole that he intended to cut into wood. As he started to drop it at the woodpile, he stumbled and the pole fell on Robert. His wife hollered to him that the end of the pole tapped the boy. He did not know that the doy was near until his wife's outcry. The pole was 6 or 8 inches, but his evidence is confused as to whether it was such size in diameter or circumference. The dogs were not fighting. He admitted that he went in the the house without doing anything for the boy; and that it was about 10 or 15 minutes before the boy's stepmother came and picked him up. The sole excuse for failure to give aid or succor was fright—he was scared nearly to death. He said that Robert was standing and that the pole fell not over 2 or 3 feet. He could give no reason for the boy's telling a falsehood on him, as he said they had never had a cross word. Appellant's wife, who was in the house, corroborated his version. She said that they were both scared, and it was on that account that they did nothing by way of aid to the boy. She also said that the pole did not have much force when it struck. A brother saw appellant carrying the pole on his shoulder and saw him throw it down, but was too far away to see exactly what happened.

The little boys, who, according to Robert's statement, were present, were called as witnesses by the appellant. S. B. Stamps was found to be incompetent as a witness, and, by agreement, was withdrawn. Joe Louis O'Quinn, a nephew of appellant, testified that he was not present. Eddie C. Stamps, a cousin of the appellant, said that he was up the road, catching his dog, and that he did not see what happened; nor did he see any dogs fighting.

These boys were young. They were kin to the appellant; and their failure to corroborate Robert Stamps, does not, under the circumstances, necessitate the conclusion that his story was untrue.

Appellant contends that the nature of Robert Stamp's injury, his youth, and the possibility of his being coached stamp his evidence as unreasonable and improbable.

 The boy's narrative of the events was clearcut and straightforward. The doctor's description of the fracture undoubtedly compelled the conclusion that terrific force was necessary to effect such a result. Obviously he could not remember events which occurred during the time he was in a coma. But there was no proof either that he sustained an impairment of his mental faculties or that he experienced a loss of memory as regards events prior to the injury. The appellant did not seek to elicit information on either of those subjects from the doctor, who is an expert. In fact, the appellant did not cross-examine the doctor at all.

The victim was 12 years old and in the fifth grade at the time of the trial. The judge determined, and was satisfied with, the boy's intelligence. Compare McNally v. State, Miss., 56 So. (2d) 834. Besides, he had the whole picture before him on the motion for a new trial. Suffice it to say, this boy was thoroughly grilled on cross-examination, and his answers indicate an intelligence quotient far above the average 12 year old Negro boy.

There was no proof that the boy was coached into telling his story. When appellant asked, on cross-examination, who told him to tell that story in court, he replied, "Nobody. That is what happened." His answers on such examination went into the most minute details and constitute irrefutable proof that his tale was not memorized.

Against the State's version, which the jury were well warranted in finding to be reasonable, the appellant contended that the pole fell only 2 or 3 feet and without much force. If it was only 6 or 8 inches in circumference, it seems impossible that such a direful result could have occurred; and if 6 or 8 inches in diameter, such a result was highly improbable. Besides, failing to administer relief after the claimed accident, leaving the boy where he had fallen, refusing to let him be brought into the house—such acts were sufficient to warrant the jury in believing that no accident had occurred, but that, on the

other hand, the blow was struck out of a spirit of malice toward the victim.

Complaint is also made in connection with the effort of the State to introduce a stick as the one used in the assault.

The prosecuting witness was asked if he saw the stick with which appellant struck him. When a certain stick was handed to him, he said, "that looks like it". Objection was made and sustained. The court then stated that he would let counsel examine the witness, under a reserved ruling, to see if the stick could be identified. When there was no further effort in that direction, the court instructed the jury to disregard the evidence about the stick. He thereupon polled the jurors, and asked if they would obey his instructions. Each promised that he would.

In Warren v. State, 174 Miss. 63, 164 So. 234, 235, it was said that ██ ██ "the proper practice in jury trials is that the judge shall rule positively one way or the other when the evidence is offered and the objection thereto is made." But it was also there said that "this, however, is not to be laid down as an inflexible rule, there being several appropriate circumstances for its reasonable relaxation." In Henley v. State, 202 Miss. 37, 30 So. (2d) 423, ██ ██ the introduction of a large stick in evidence, in the absence of a showing that such stick was used in the assault, was held to be reversible error.

But, in this case, the stick was not admitted.

We do not see how this incident resulted in prejudice to the appellant.

The case has been thoroughly considered and we find no reversible error in the record.

Affirmed.

**McGehee, C. J.,** and **Alexander, Kyle** and **Ethridge, JJ.,** concur.